1
2   WILDE & ASSOCIATES
    Gregory L. Wilde, Esq.
3   Nevada Bar No. 004417
    208 South Jones Boulevard
4   Las Vegas, Nevada 89107
    Telephone:  702 258-8200
5   bk@wildelaw.com
    Fax:  702 258-8787
6
    and
7
    MARK S. BOSCO, ESQ.
8   Arizona Bar No. 010167
    TIFFANY & BOSCO, P.A.
9   2525 East Camelback Road, Suite 300
    Phoenix, Arizona 85016
10  Telephone: (602) 255-6000
11
    Wells Fargo Bank, N.A.
12  09-73185

Electronically Filed on _____

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-S-08-12975-lbr |
| Brian S. Kipperman | Date:  6/24/09 |
| | Time: 10:30am |
| | Chapter 7 |
| Debtor. | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

Wells Fargo Bank, N.A., Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

1.    That on or about March 31, 2008, the above named Debtors filed their current Chapter 7 Petition in Bankruptcy with the Court.

2.    Secured Creditor is the current payee of a promissory note dated May 13, 2005 in the principal sum of $55,920.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of

same date ("Trust Deed" herein) upon property generally described as 100 Pulsipher Lane, Mesquite,

NV 89027, and legally described as follows:

> PARCEL I:
> AN UNDIVIDED FRACTIONAL INTEREST AS A TENANT IN COMMON IN THE
> COMMON ELEMENTS AS DEFINED IN SECTION 1.11 OF THE DECLARATION
> OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR SMOKEY LANE
> CONDOMINIUMS, A COMMON INTEREST CONDOMINfUM DEVELOPMENT
> RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
> COUNTY, NEVADA ON NOVEMBER 19,2004 IN BOOK 20041 119 AS
> DOCUMENT NO. 0003212 AS THE SAME MAY FROM TIME TO TIME BE
> AMENDED ANDIOR SUPPLEMENTED, TO WHICH REFERENCE IS
> HEREAFTER MADE ("DECLARATION").
>
> EXCEPTING THEREFROM ALL BUILDING UNITS AND ASSOCIATION
> PROPERTY IN THE PROJECT, AS THOSE TERMS ARE DEFINED IN ARTICLE I
> OF THE DECLARATION.
>
> AND RESERVING THEREFROM THE RIGHT TO POSSESSION OF ALL THOSE
> AREAS DESIGNATED AS LIMITED COMMON ELEMENTS IN SECTION 5.1 OF
> THE DECLARATION ANDIOR DESIGNATED AS SUCH UPON THE PLAT OF
> CASA BLANCA VILLAS CONDOMINIUMS AS SHOWN BY MAP THEREOF
> ON FILE IN BOOK 117 OF PLATS, PAGE 23 IN THE OFFICE OF THE COUNTY
> RECORDER OF CLARK COUNTY, NEVADA.
>
> AND FURTHER RESERVING THEREFROM FOR THE BENEFIT OF THE
> OWNERS OF CONDOMINIUMS (I.E. BUILDING UNITS) IN OTHER PHASES OF
> THE PROJECT, A NON-EXCLUSIVE EASEMENT OF INGRESS, EGRESS AND
> RECREATIONAL USE, ON, OVER AND UNDER THE COMMON ELEMENTS AS
> DEFINED IN SECTION 1.11 IN THE DECLARATION, WHICH EASEMENT IS
> SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION.
>
> PARCEL II:
> LIVING UNIT 3214 IN BUILDING B4 OF CASA BLANCA VILLAS
> CONDOMINIUMS AS SHOWN BY MAP THEREOF ON FILE IN BOOK 117 OF
> PLATS, PAGE 23 IN THE OFFICE OF THE COUNTY RECORDER OR CLARK
> COUNTY, NEVADA.

("subject property" herein).

    3.     Secured Creditor is informed and believes, and, based upon such information and belief,

alleges that title to the subject property is currently vested in the name of Debtor.

    4.     With respect to secured Creditor's trust deed the following is due and owing:

    Unpaid Principal Balance                       $52,363.83

| | | |
|---|---|---|
| 2 Monthly Payments at $363.66 | $ | 727.32 |
| (April 1, 2009 – May 1, 2009) | | |
| Accrued Late Charges | $ | 15.66 |
| Bad Check | $ | 25.00 |
| Motion Filing Fee | $ | 150.00 |
| Attorneys Fees | $ | 750.00 |
| Total Arrearages | $ | 1,667.98 |

Furthermore, a payment becomes due on June 1, 2009 and on the first (1st) day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

5.      Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property. The fair market value of the property pursuant to Debtor's Schedule "A" is $70,000.00, less ten percent (10%) cost of marketing, less the first secured lien resulting in insufficient equity. Therefore, the secured creditor is not adequately protected. A true and correct copy of the Debtor's Schedule "A" is attached hereto as Exhibit "A".

6.   Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.      Secured Creditor has incurred to date attorney's fees of approximately $750.00.

8.      Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9.      Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

10.      James F. Lisowski, Sr. has been appointed by this Court the Chapter 7 Trustee in this instant Bankruptcy proceeding. By virtue of the position as Trustee of the estate of Debtor herein,

Debtor holds title to the subject property in that capacity. To the extent the relief sought herein is granted, Respondent, James F. Lisowski, Sr., Trustee, is bound any such judgment.

11.    This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

12.    Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying other lienholders as detailed in Local Rule 4001 (a)(1). Such lienholders will be notified of a foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1)    For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)    That a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order granting relief from the automatic stay.

(3)    In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

///
///
///
///
///
///
///

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED _____5/27/09_____ .

WILDE & ASSOCIATES

By _____

**GREGORY L. WILDE, ESQ.**
Attorney for Secured Creditor
208 South Jones Boulevard
Las Vegas, Nevada 89107

Assessor's Parcel Number:
001/18/702/003 001-18-711-168
ESCROW#05-03-1484-JKB
Recording requested by:
Wells Fargo Bank N.A.
Wells Fargo Equity Direct
2202 W Rose Garden Lane
Phoenix, AZ 85027

THE ORIGINAL OF THIS DOCUMENT
WAS RECORDED ON   5/13/05
AS INSTRUMENT NO.   05457
IN BOOK   2005 0513

When recorded return to:
Wells Fargo Bank N.A.
Wells Fargo Services
Consumer Loan Servicing
P.O. Box 31557
Billings, MT 59107

Mail Tax Statements To:
BRIAN S KIPPERMAN
7829 LONESOME HARBOR, LAS VEGAS, NV  89131

─────── State of Nevada ───────

### DEED OF TRUST
(With Future Advance Clause)

65079622661998

1. **DATE AND PARTIES.** The date of this Deed of Trust ("Security Instrument") is
   5   May       2005   and the parties are as follows:

   TRUSTOR ("Grantor"):
   BRIAN S KIPPERMAN, AND LEIGH A KIPPERMAN, HUSBAND AND WIFE

   whose address is:
       100 PULSIPHER LANE #3214, MESQUITE, NV  89027-0000

   TRUSTEE: American Securities Company of Nevada
       18700 NW Walker Road, Bldg 92, Beaverton OR 97006

   BENEFICIARY ("Lender"):
       Wells Fargo Bank N.A.
       420 Montgomery Street
       San Francisco, CA  94104

**NEVADA - MASTER FORM DEED OF TRUST**                    20050757700245

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, all of that certain real property located in the County of **Clark**                , State of Nevada, described as follows:
**See attached Exhibit A**

**This deed of trust is 2nd and subject to a deed of trust securing the note in the amount of $55,920.00 recording concurrently herewith.**

with the address of **100 PULSIPHER LANE #3214, MESQUITE, NV 89027-0000**                , together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed **$10,485.00**                . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt dated **5/5/2005**                together with all amendments, extensions, modifications or renewals. The maturity date of the Secured Debt is **4/28/2030**        .
   B. All future advances from Lender to Grantor under such evidence of debt. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances which exceed the amount shown in Section 3. Any such commitment must be agreed to in a separate writing.
   C. All sums advanced and expenses incurred by Lender for insuring, preserving, or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**NEVADA - MASTER FORM DEED OF TRUST**

8.  **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property, or any part thereof or interest therein, whether senior or subordinate hereto, when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of the Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9.  **DUE ON SALE OR ENCUMBRANCE.** Upon sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary, or by operation of law, of all or any part of the Property or any interest therein, then at its sole option Lender may, by written notice to Grantor, declare all obligations secured hereby immediately due and payable, except to the extent that such acceleration and in such particular circumstances where exercise of such a right by Lender is prohibited by law.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will not remove or demolish the Property, or any part thereof. Grantor will keep the Property free of noxious weeds, grasses and public nuisances. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, sells and conveys to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument. This assignment will remain effective during any period of redemption by the Grantor until the Secured Debt is satisfied. Grantor agrees that Lender is entitled to notify Grantor or Grantor's tenants to make payments of Rents due or to become due directly to Lender after such recording. However, Lender agrees not to notify Grantor's tenants until Grantor defaults and Lender notifies Grantor of the default and demands that Grantor or Grantor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**NEVADA - MASTER FORM DEED OF TRUST**

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the property is a unit in a Condominium Project or is part of a Planed Unit Development ("PUD"), Grantor agrees to the following:

   A. **Obligations.** Grantor shall perform all of Grantor's obligations under the Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Projects or PUD and any homeowners association or equivalent entity ("Owners Association"); (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Grantor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

   B. **Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project or PUD which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then Grantor's obligation under Section 19 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Grantor shall give Lender prompt notice of any lapse in required hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to Property, whether to the unit or to common elements, any proceeds payable to Grantor are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to Grantor.

   C. **Flood Insurance.** Grantor agrees to maintain flood insurance for the life of the Secured Debt which is acceptable, as to form, amount and extent of coverage to Lender.

   D. **Public Liability Insurance.** Grantor shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

   E. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Grantor in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 18.

   F. **Lender's Prior Consent.** Grantor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management by the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

   G. **Remedies.** If Grantor does not pay condominium or PUD dues and assessments when due, then Lender may pay them. Any amount disbursed by Lender under this section shall become additional debt of Grantor secured by this Security Instrument. Unless Grantor and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Secured Debt rate and shall be payable, with interest, upon notice from Lender to Grantor requesting payment.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**NEVADA - MASTER FORM DEED OF TRUST**

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lenders' rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

**NEVADA - MASTER FORM DEED OF TRUST**

LENV2 (0406)                    Page 5 of 10                    20050757700245

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be paid to Lender and applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Grantor. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires or is required by applicable law. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. If Lender determines at any time during the term of the Secured Debt that the Property securing the Secured Debt is not covered by flood insurance or is covered by flood insurance in an amount less than the amount required by law, Lender will notify Grantor that Grantor should obtain flood insurance at Grantor's expense. If Grantor fails to obtain adequate flood insurance which is acceptable to Lender, Lender shall purchase flood insurance on Grantor's behalf. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to transfer, mortgage and convey Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this

**NEVADA - MASTER FORM DEED OF TRUST**

Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument. In the event any section in this Security Instrument directly conflicts with any section of the revolving line of credit agreement or promissory note referenced in Section 4, the terms and conditions of said revolving credit agreement or promissory note (as applicable), the arbitration agreement, and the agreement to provide flood/property insurance, all of which I agree to by signing this Security Instrument, the terms and conditions of said documents and not the Security Instrument shall control.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or as shown in Lender's records, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors.

26. **WAIVERS.** In the event Grantor is not also the borrower, customer or obligor (all referred to as "Borrower") under the Secured Debt:

    A. Grantor waives all rights of homestead exemption in the Property.

    B. Grantor represents and warrants to Lender that this Security Instrument is executed at the request of the Borrower; Grantor will not, without prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or substantially all of the Property; and Grantor has established adequate means of obtaining from Borrower, on a continuing basis, financial and other information pertaining to the financial condition of Borrower. Grantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect the risks of Grantor, and Grantor further agrees that Lender has no obligation to disclose to Grantor information or material acquired in the course of Lender's relationship with Borrower.

    C. Grantor hereby waives any right to require Lender to proceed against any person, including Borrower; proceed against or exhaust any collateral held from Borrower or any other person; pursue any other remedy in Lender's power; or make any presentments, demands for performance or give any notices of nonperformance, protests, notices of protest of dishonor in connections with the Secured Debt and this Security Instrument.

    D. Grantor also waives any defense arising by reason of any disability or other defense of Borrower or any other defense of Borrower or any other person; the cessation from any cause whatsoever, other than payment in full of the obligations of Borrower under this Security Instrument and Secured Debt; the application by Borrower of the proceeds of the Secured Debt; for purposes

**NEVADA - MASTER FORM DEED OF TRUST**

other than the purposes represented by Borrower to Lender or intended or understood by Lender to Grantor; any act or omission by Lender which directly or indirectly results in or aids the discharge of Borrower by operation of law or otherwise, including any impairment or loss of any security resulting from the exercise or election of any remedies by Lender, including, without limitation, election by Lender to exercise any of Lender's rights, now or hereafter obtained, under any power of sale set forth in any security instrument securing repayment of the indebtedness of Borrower and the consequent loss, limitation or impairment of the right to recover any deficiency from Borrower in connection therewith or due to any fair value limitations or determinations in connection with a judicial foreclosure; or any modification of the Secured Debt in any form whatsoever, including, without limitation, the renewal, extension, acceleration or other change in time for payment or any increase in the rate of interest. Until all amounts secured shall have been paid in full, Grantor further waives any right to enforce any remedy which Lender now has or may hereafter have against Borrower or any other person and waives any benefit of, or any right to participate in, any security whatsoever now or hereafter held by Lender.

E. Grantor acknowledges, warrants and agrees that each of the waivers set forth in this section are made with the full knowledge of their significance and consequence and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of said waivers are determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

27. **STATEMENT OF CONDITION.** From time to time, as required by law, Lender shall furnish to Grantor or its agent such statements as may be required concerning the condition of the Secured Debt. Lender will charge a fee for such statements as may be permitted by law.

28. **RECONVEYANCE.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and any note or instrument evidencing the Secured Debt to the Trustee. Trustee shall reconvey, without warranty, the Property or that portion secured by this Security Instrument. To the extent permitted by law, the reconveyance may describe the grantee as "the person or persons legally entitled thereto." Neither Lender nor Trustee shall have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance. Lender will charge a fee for such reconveyance as may be permitted by law.

29. **OTHER TERMS.** If checked, the following shall be incorporated into and shall amend and supplement the covenants and agreements of this security instrument:

☐ Additional Terms:

**NEVADA - MASTER FORM DEED OF TRUST**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument.

Grantor                                    5·9·05          Grantor                              5-9-05
BRIAN S KIPPERMAN              Date          LEIGH A KIPPERMAN              Date

_____        _____       _____        _____
Grantor                              Date          Grantor                              Date

_____        _____       _____        _____
Grantor                              Date          Grantor                              Date

_____        _____       _____        _____
Grantor                              Date          Grantor                              Date

**NEVADA - MASTER FORM DEED OF TRUST**

LENV2 (0406)                      Page 9 of 10                     20050757700245

**ACKNOWLEDGMENT:**
(Individual)

STATE OF <u>NV</u>      } ss.

COUNTY OF <u>Clark</u>      } ss.

This instrument was acknowledged before me on ___ *5-9-05* ___ by
BRIAN S KIPPERMAN, LEIGH A KIPPERMAN

_____
Signature of notarial officer

_____
Title and Rank (Optional)

My commission expires: *Jan 2 2008*

SCOTT C. KOCH
Notary Public, State of Nevada
Appointment No. 03-85713-1
My Appt. Expires Jan 2, 2008

(Seal)

**NEVADA - MASTER FORM DEED OF TRUST**

**LENV2 (0406)**          **Page 10 of 10**          **20050757700245**

Escrow No.: 05-03-1484-JKB

## EXHIBIT "A"

## LEGAL DESCRIPTION

**PARCEL I:**

AN UNDIVIDED FRACTIONAL INTEREST AS A TENANT IN COMMON IN THE
COMMON ELEMENTS AS DEFINED IN SECTION 1.11 OF THE DECLARATION
OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR **SMOKEY LANE
CONDOMINIUMS**, A COMMON INTEREST CONDOMINIUM DEVELOPMENT
RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA ON NOVEMBER 19, 2004 IN BOOK 20041119 AS
DOCUMENT NO. 0003212 AS THE SAME MAY FROM TIME TO TIME BE
AMENDED AND/OR SUPPLEMENTED, TO WHICH REFERENCE IS
HEREAFTER MADE ("DECLARATION").

EXCEPTING THEREFROM ALL BUILDING UNITS AND ASSOCIATION
PROPERTY IN THE PROJECT, AS THOSE TERMS ARE DEFINED IN ARTICLE I
OF THE DECLARATION.

AND RESERVING THEREFROM THE RIGHT TO POSSESSION OF ALL THOSE
AREAS DESIGNATED AS LIMITED COMMON ELEMENTS IN SECTION 5.1 OF
THE DECLARATION AND/OR DESIGNATED AS SUCH UPON THE PLAT OF
**CASA BLANCA VILLAS CONDOMINIUMS** AS SHOWN BY MAP THEREOF
ON FILE IN BOOK 117 OF PLATS, PAGE 23 IN THE OFFICE OF THE COUNTY
RECORDER OF CLARK COUNTY, NEVADA.

AND FURTHER RESERVING THEREFROM FOR THE BENEFIT OF THE
OWNERS OF CONDOMINIUMS (I.E. BUILDING UNITS) IN OTHER PHASES OF
THE PROJECT, A NON-EXCLUSIVE EASEMENT OF INGRESS, EGRESS AND
RECREATIONAL USE, ON, OVER AND UNDER THE COMMON ELEMENTS AS
DEFINED IN SECTION 1.11 IN THE DECLARATION, WHICH EASEMENT IS
SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION.

**PARCEL II:**

LIVING UNIT 3214 IN BUILDING B4 OF **CASA BLANCA VILLAS
CONDOMINIUMS** AS SHOWN BY MAP THEREOF ON FILE IN BOOK 117 OF
PLATS, PAGE 23 IN THE OFFICE OF THE COUNTY RECORDER OR CLARK
COUNTY, NEVADA.

# FIXED/ADJUSTABLE RATE NOTE

(One-Year Treasury Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MAY 09, 2005                    LAS VEGAS                    NEVADA
[Date]                          [City]                       [State]

100 PULSIPHER LANE #3214, MESQUITE, NV  89027

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ******55,920.00   (this amount is called "Principal"), plus interest, to the order of Lender. Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.375 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on JUNE 01, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 01, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA  503060304

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ ***313.14         . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of MAY, 2010         , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP-843N (0005)          Form 3522 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5          Initials:



The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS          percentage points ( 2.750          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.375          % or less than 2.750          %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.375          %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

-843N (0005)

Form 3522 1/01

Initials

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
BRIAN S. KIPPERMAN          -Borrower          LEIGH S. KIPPERMAN          -Borrower


_____(Seal)          _____(Seal)
                            -Borrower                                      -Borrower


_____(Seal)          _____(Seal)
                            -Borrower                                      -Borrower


_____(Seal)          _____(Seal)
                            -Borrower                                      -Borrower


*[Sign Original Only]*

B6A (Official Form 6A) (12/07)

IN RE KIPPERMAN, BRIAN S _____    Case No. _____
             Debtor(s)                                                                      (If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **100 PULSIPHER # 3214, MESQUITE, NV** | | | 72,000.00 | 63,312.48 |
| **7829 LONESOME HARBOR** | | | 400,000.00 | 504,205.95 |
| | | **TOTAL** | **472,000.00** | |

(Report also on Summary of Schedules)

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

EXHIBIT 

## ** SECTION 362 INFORMATION SHEET **

Brian Kipperman
DEBTOR(S)

Chapter 7
Case No.: 08-12975-lbr

Wells Fargo Bank, N.A.
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 100 Pulsipher Lane, Mesquite NV 89027

NOTICE SERVED ON: Debtor(s) _____x_____; Debtor (s) Counsel _____x_____; Trustee _____x_____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st_Wells Fargo Bank, N.A. (PB $52,363.83) | 1st _____ |
| Total Encumbrances: $52,363.83 | 2nd _____ |
| APPRAISAL or OPINION as to VALUE: | Total Encumbrances: $_____ |
| "Per attached Schedule "A" $72,000.00 | APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $55,920.00<br>Interest Rate: 5.375<br>Duration: 30 Year<br>Payment Per Month: $ 375.52<br>Date of Default: April 1, 2008<br>Amount of Arrearages: $ 1,667.98<br>Date of Notice of Default: May 20, 2009<br>SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.**<br><br>SUBMITTED BY: _____<br><br>SIGNATURE: _____ | SPECIAL CIRCUMSTANCES:<br><br>SUBMITTED BY: _____<br><br>SIGNATURE: _____ |



EXHIBIT ___